JULIUS DOLINER, trustee, *vs.* TOWN CLERK OF MILLIS
& another.[1]

Middlesex.    May 3, 1961. — June 9, 1961.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Zoning,* Amendment of by-law or ordinance, Validity of zoning.

Following a public hearing by the planning board of a town on a proposed revision of its zoning by-law and zoning map, changes therein made by the board and included in its recommendations to the town, involving shifts in the classification of relatively small parcels of land from one zoning district to another and affecting only a small percentage of the total town acreage, and embodied in maps posted and explained at the town meeting which adopted the proposed revision with such changes, did not render the revision invalid under G. L. c. 40A, § 6, as amended through St. 1957, c. 137.    [12–13]

The requirement of G. L. c. 40A, § 6, as amended through St. 1957, c. 137, that the planning board of a town submit "a final report with recommendations" to a town meeting as a preliminary to its adoption of zoning by-law amendments was satisfied where the planning board recorded its written approval of the proposed amendments, and its chairman explained them, at the town meeting.    [13]

A revision of a town's zoning by-law, adopted for the town as a whole according to a comprehensive scheme formulated by the planning board after consultation with zoning experts and careful studies, providing for lots of various minimum sizes and classifying the land as residential, commercial or industrial, was not shown to be arbitrary, unreasonable, lacking in uniformity, or invalid as not reasonably related to the statutory objects of zoning, even though the revised by-law imposed more onerous restrictions than the preëxisting zoning by-law.    [13–14]

A petition for a writ of mandamus attacking the validity of an entire zoning by-law on the alleged ground that certain provisions thereof prohibited religious and educational institutions in industrial districts in violation of G. L. c. 40A, § 2, as amended through St. 1957, c. 145, was properly dismissed where those provisions of the by-law were clearly separable from the rest of the by-law, which allowed such institutions in the other zoning districts, and the petitioner did not show that any land owned or interest represented by him was adversely affected by the alleged prohibition.    [14–15]

---

[1] The other respondent is the town building inspector.

PETITION for a writ of mandamus filed in the Superior Court on May 28, 1959.

The case was heard by *Wisnioski, J.*

*John J. Fitzpatrick,* (*Eugene L. Tougas* with him,) for the petitioner.

*Samuel H. Cohen,* (*Anthony T. Petrocca* with him,) for the respondents.

CUTTER, J. This is a petition by the trustee of a real estate trust, which owns land in Millis, for a writ of mandamus to require (a) the town clerk to expunge from the records of a town meeting held on March 9, 1959, a vote adopting an amendment of the town zoning by-law, and (b) the building inspector to enforce the by-law as it stood prior to the 1959 amendment. Substantial testimony was taken before a judge of the Superior Court (not the judge who dealt with the related case of *Doliner* v. *Planning Bd. of Millis, ante,* p. 1), who made findings. Judgment for the respondents was ordered. The petitioner appealed from the judgment. The evidence designated by the parties is reported. See Rule 2 of the Rules for the Regulation of Practice before the Full Court (1952), 328 Mass. 693, as amended December 12, 1955, 334 Mass. 772.

During 1958 the town planning board employed a firm of consultants to make a survey of the town and to prepare a comprehensive zoning scheme. Such a scheme was drawn up as an amendment to or revision of the town's zoning by-law and provided for lots varying in size from 15,000 to 60,000 square feet taking into account the location, water table, sanitary conditions, and other characteristics of the land. The proposal made three classifications of land, residential, commercial and industrial, and was similar to zoning plans of other towns in the area.

On February 19, 1959, after newspaper notice, a public hearing was held and the plan with a map was submitted and described by the chairman of the planning board to the more than one hundred fifty persons present. Various perfecting changes, involving shifts in the classification of relatively small parcels from one district to another, were

suggested both during and after the public hearing. Subsequently thirteen of these proposed changes, affecting some 4.3 per cent (about 339 acres) of the total town acreage (7,788 acres), were accepted by the planning board and included in the proposed zoning plan.

On March 9, 1959, at a town meeting attended by some 550 to 600 persons, the new zoning proposal was considered. Distribution was then made of copies of the proposed by-law and of a map, which, as was stated to those present, did not contain the changes made by the board after the February 19 public hearing. In the hall, however, were posted maps containing those changes made after February 19, and also a map with acetate overlays to show water lines, swampy areas, and current land uses. The chairman of the planning board explained the proposal, including the changes made since the public hearing. There was subsequent discussion lasting about an hour. One amendment was proposed at this meeting and later passed at a special town meeting on May 7, 1959. The principal proposal, as altered after the public hearing, was passed by the required two-thirds vote at the March 9 town meeting.

1. We do not determine whether, in view of other available remedies for testing the validity of the zoning by-law in its application to Doliner, he has any remedy by mandamus. See, however, *Whittemore* v. *Town Clerk of Falmouth,* 299 Mass. 64, 69; *Atherton* v. *Selectmen of Bourne,* 337 Mass. 250, 258–259. We assume, without deciding, that Doliner has standing to bring some proceeding to test the validity of the zoning by-law in its application to his property. We consider the case on the merits, as it has been presented to us, and disregard procedural questions not fully argued.

2. Changes made by the planning board after the public hearing on February 19 did not render the zoning revision invalid under G. L. c. 40A, § 6[2] (as amended through

<hr>

[2] Section 6 reads in part, "Zoning . . . by-laws may be adopted and from time to time be changed by amendment . . . in the manner hereinafter provided. No zoning . . . by-law originally establishing the boundaries of the

St. 1957, c. 137). The planning board at the public hearing had before it a tentative proposed by-law and proposed zoning map. It then received suggestions for changes of zoning for certain small areas. These were embodied in maps posted in the town meeting room and were explained. The trial judge was warranted in concluding that these changes "did not change the substantial character of the [by-]law so that [under G. L. c. 40A, § 6] a new public hearing was required." As the judge pointed out "the purpose of such public hearing is to obtain public sentiment so that proper revision can be made." The case is governed by *Burlington* v. *Dunn*, 318 Mass. 216, 218–219. Cf. *Fish* v. *Canton*, 322 Mass. 219, 221–224. The recorded written approval of the proposed revised by-law by the planning board was a sufficient recommendation by the board to the town meeting that the by-law be adopted, particularly when taken with the explanations given by the chairman at the meeting. See *Shannon* v. *Building Inspector of Woburn*, 328 Mass. 633, 635. Cf. *Whittemore* v. *Town Clerk of Falmouth*, 299 Mass. 64, 68–69 (board unable to make recommendation because of tie vote and auditor found no recommendation had been made); *Caires* v. *Building Commr. of Hingham*, 323 Mass. 589, 595. The persons at the town meeting had ample knowledge of the position and advice of the planning board.

3. Doliner has not established that the revised by-law was not based upon sound grounds reasonably related to the public health, morals, safety, and welfare. The plan was drawn up after consultation with zoning experts. It was carefully discussed by the planning board. Conditions in neighboring towns were considered. Studies were made of existing land use, public service facilities, soil and land

---

district or the regulations and restrictions to be enforced therein, and no such . . . by-law changing the same . . . , shall be adopted until after the planning board . . . has held a public hearing thereon after due notice given and has submitted a final report with recommendations to the . . . town meeting, or until twenty days shall have elapsed after such hearing without the submission of such report; provided [proviso not applicable] . . . . After such notice, hearings and report . . . a . . . town meeting may adopt, reject, or amend and adopt any such proposed . . . by-law."

conditions, sanitary problems, and similar matters. Consideration was given, in determining lot sizes, to their proximity to utilities and to the center of the town. "Every presumption is to be made in favor of the by-law, and its enforcement will not be refused unless it is shown . . . that it conflicts with the Constitution or the enabling statute." See *Caires* v. *Building Commr. of Hingham,* 323 Mass. 589, 594–595. Doliner has not proved that the classification of properties in this plan of zoning, adopted for the town as a whole, is arbitrary, unreasonable, or so lacking in uniformity as to make it an invalid exercise of power to impose zoning restrictions either generally or in its application to any specific lots. See *Tracy* v. *Board of Appeals of Marblehead,* 339 Mass. 205, 207–208. It is not fatal to the validity of the revised by-law that the preëxisting by-law imposed less onerous restrictions. Amendments may be adopted which bear a substantial relation to the public health, safety, morals, or general welfare or if they reasonably can be thought to have some tendency to advance legitimate aspects of the public interest. See *Lexington* v. *Simeone,* 334 Mass. 127, 131; *Pierce* v. *Wellesley,* 336 Mass. 517, 521. See also *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542, 545–546. Cf. *Leahy* v. *Inspector of Bldgs. of New Bedford,* 308 Mass. 128, 132–134 (amendment resulting in spot zoning); *122 Main St. Corp.* v. *Brockton.* 323 Mass. 646, 648–651.

4. Doliner contends that the entire revised by-law is invalid because it purports to prohibit within industrial districts certain religious and educational uses. See G. L. c. 40A, § 2 (as amended through St. 1957, c. 145; since amended by St. 1959, c. 607, § 1); *Attorney Gen.* v. *Dover,* 327 Mass. 601, 604, 608. If the by-law in fact prohibits religious and educational institutions in industrial districts, it probably does so by inadvertence. Such uses are clearly permitted in residential (§ III–A, pars. 2, 3) and commercial (§ III–B, par. 1) districts. Section III–C, par. 1, leaves at least substantial doubt whether religious and educational institutions are also to be permitted in industrial districts.

When and if the occasion arises for interpreting the by-law in this respect, our duty will be to do so, if possible, in a manner which sustains its validity having in mind G. L. c. 40A, § 2. See analogy of *Boston* v. *Merchants Natl. Bank,* 338 Mass. 245, 248. Even if it be assumed that § III–C, par 1, of the by-law operates to forbid religious and educational structures in industrial districts, the words of the section having any application to these institutions are clearly separable, as the trial judge ruled. See § VI–H of the by-law, making each section and provision separable. See *Attorney Gen.* v. *Dover,* 327 Mass. 601, 608, where the offending by-law was treated as invalid *"in so far as* it prohibits or limits the use . . . premises for sectarian educational purposes"* (emphasis supplied). See also *Opinion of the Justices,* 330 Mass. 713, 726.

We do not reach the question whether Doliner has standing to assert the invalidity of the by-law in this respect. Certainly he has not shown that any land owned by him as trustee or otherwise is in an industrial area or is otherwise adversely affected by the supposed prohibition, or that he represents any religious or educational institution affected by the provision.                                   *Judgment affirmed.*